## SHERMAN v. DWIGHT.

(Supreme Court, Appellate Division, Third Department. May 4, 1910.)

1. CORPORATIONS (§ 410*)—AGENTS—POWERS.
   The by-law of a corporation owning the stock of a mining corporation and engaged in selling it, which provides that no contract shall be made on behalf of the corporation by any officer thereof unless the same is authorized, etc., does not limit the authority of a managing agent intrusted with the sale of the stock to make a contract verbally authorized by those controlling the corporation as an incident to the sale, and, where one selling stock was authorized by the secretary and treasurer in charge of the corporation in the selling of the stock to make contracts in the name of the corporation binding it to repurchase on the buyer giving notice, the corporation alone was bound thereby, and not the selling agent.
   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 410.*]

2. REFERENCE (§ 68*)—FINDINGS—EVIDENCE.
   A referee to hear and determine the action may disregard the testimony of a party thereto.
   [Ed. Note.—For other cases, see Reference, Cent. Dig. § 102; Dec. Dig. § 68.*]

3. APPEAL AND ERROR (§ 931*)—PRESUMPTIONS.
   The court, on appeal from a judgment entered on the report of a referee to hear and determine the action, may presume in support of the judgment that the referee found a fact in opposition to the testimony of a party.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 432*)—CONTRACTS IN BEHALF OF CORPORATION—ACTION
    AGAINST AGENT—BURDEN OF PROOF.
        One suing an agent of a corporation on his implied warranty of au-
    thority to execute a contract on behalf of the corporation has the burden
    of proving want of authority.

        [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1730; Dec.
    Dig. § 432.*]

        Kellogg and Cochrane, JJ., dissenting.

Appeal from Order Entered on Report of Referee.

Action by Henry C. Sherman against James S. Dwight. From a
judgment for plaintiff entered on the report of a Referee appointed to
hear and determine the action, defendant appeals. Reversed, and new
trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE,
SEWELL, and HOUGHTON, JJ.

Alfred D. Van Buren, for appellant.
H. H. Flemming, for respondent.

SMITH, P. J. In 1902 and 1903, Daugherty & Albers, a corpora-
tion formed under the laws of the state of New York, was selling the
mining stock of Mine La Motte Lead & Smelting Company. The de-
fendant was acting as managing agent at Poughkeepsie, and as such
agent sold to the plaintiff on or about March 27, 1903, 50 shares of
said stock for the sum of $425. As part of the transaction the defend-
ant executed to the plaintiff an instrument of which the following is
a copy:

                                    "Poughkeepsie, N. Y., Mch. 27, 1903.
"AS:
    "Henry C. Sherman, of Oneonta, N. Y., being the holder of fifty shares of
the capital stock of the Mine La Motte Lead & Smelting Company, purchased
at eight 50-100 dollars per share, we, the undersigned, hereby agree to and
with said Sherman to buy said shares of him at the price paid for the same
on his giving thirty days notice in writing after Jan. 1, 1904.
        "[Signed]                                Daugherty & Albers."

Thereafter plaintiff, having become dissatisfied, made application
to Daugherty & Albers to repurchase the stock pursuant to this agree-
ment, which Daugherty & Albers refused to do, claiming that the
agreement was executed without authority. This plaintiff thereupon
brought this action against the defendant upon his implied warranty
of authority to execute said contract. The defendant has been charged
with a judgment representing the difference in value between the price
paid for the stock and $1.25 per share, the value at the time the plain-
tiff demanded its repurchase by Daugherty & Albers, together with
interest to the date of the judgment.

The referee has found the purchase by the plaintiff of the said
stock, the execution of the agreement to repurchase as a part of said
transaction, and that Daugherty & Albers was a domestic corporation
at the time of the execution of said agreement. He then finds that the
by-laws of the said corporation provided:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"No debts shall be contracted or liability incurred or contract entered into by and in behalf of this company unless the same be authorized and directed by a resolution of the board of directors, or a majority of them, and the resolution shall be entered in the minutes of said directors."

Further that its "officers, agents and employés shall respectively have such powers and perform such duties in the management of the property and affairs of the corporation, subject always to the control of said board of directors, as may be prescribed for them by the said board of directors." It was further found that there was no resolution or other entry in the minutes of the directors conferring upon the defendant or any officer or agent of the corporation any power or authority to execute or deliver the agreement in question, and that the corporation had no knowledge of the execution and delivery of said agreement by the defendant to the plaintiff until plaintiff demanded the fulfillment thereof by said corporation. As a conclusion of law, it was found that the act of the defendant in executing the agreement was without authority, expressed or implied, from the corporation, and did not bind the corporation; that the said corporation did not ratify the same; and that the plaintiff was entitled to judgment against this defendant.

It was insisted upon the trial and upon this appeal that the by-law of the corporation quoted limited the authority of the defendant to a contract that was authorized by the board of directors by resolution duly entered; and apparently such was the view taken by the learned referee. In this I think the referee fell into an error: First, the by-law as found by the referee is not the by-law offered in evidence. The by-law as it appears in the evidence reads:

"No debts shall be contracted or liability incurred or contract made and entered into by and in behalf of this company, by any officer of this company, unless the same be authorized," etc.

The by-law as found by the referee leaves out the words "by any officer of this company." This clause seems to me a most significant one in construing the by-law. The contracts therein referred to are clearly such contracts as would only be made by an officer of the company, and do not limit the authority of a managing agent intrusted with the sale of its securities to make a contract verbally authorized by those controlling the corporation as an incident to such sale. Daugherty & Albers were practically the owners of the stock of this corporation. Daugherty was its president, but remained in the West; while Albers was the secretary and treasurer, having apparent charge of the business of the corporation in the selling of this stock. The evidence of the defendant is to the effect that he was authorized by Albers to make such contracts, where such contracts were necessary to effect a sale. Albers himself had made such a contract two months before this contract was made with the plaintiff, and the fact that such contracts had been made by the corporation became generally known, so that it was natural that intending purchasers should demand such a contract as had been given to former purchasers. Copies of letters written to the corporation by the defendant indicate his understanding of his authority to make such contracts when necessary. It is clear that both the defendant and corporation had full confidence

in the value of the stock being sold. The defendant's confidence was such that in some instances he gave his personal guaranty for stock, which he had been compelled to redeem. Where, however, he gave the guaranty of the corporation, if authorized by the corporation so to do, the liability is that of the corporation, and not his own, and to the corporation alone must the plaintiff look for compensation.

The referee undoubtedly had the right to disregard the testimony of the defendant and to find that he had no authority from Albers to make such a contract in behalf of the corporation; and we are authorized to presume that the referee has so found in support of this judgment. The burden of proof, however, was with the plaintiff to prove want of authority. The testimony of the defendant as to his authority was explicit and uncontradicted, and, in view of the course that had been taken by the corporation, was even probable. Inasmuch as the referee has apparently given an undue effect to a by-law of the corporation as limiting the authority of the defendant, the interests of justice in my judgment require that there should be a new trial, wherein the question of the defendant's authority from Albers to execute such contract may be specifically determined. The judgment should, therefore, be reversed on law and fact, and the referee discharged, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed on law and facts. Referee discharged, and new trial granted, with costs to appellant to abide event. All concur, except KELLOGG, J., dissenting in opinion in which COCHRANE, J., concurs.

JOHN M. KELLOGG, J. (dissenting). The judgment in this case is right. Defendant sold the stock to plaintiff January 19, 1903, on which day he forwarded the application to the company. He received the stock from the company by letter dated January 24th, and immediately delivered it. Nothing was said in either letter about any agreement to take back the stock, and the defendant's evidence shows that no such agreement was ever made with reference to this stock until two or three months after the sale. He produces letterpress copies of letters to the company, but is not able to produce any letters from the company bearing upon his authority. The company wrote him February 18th, a month and 19 days before he executed the guaranty in question: "We do not care to give any more guaranties on any stock." His own evidence shows that they only permitted the guaranty in exceptional cases and where actually necessary to make a sale. While he swears to many guaranties issued by him, a careful perusal of his testimony shows that most of the guaranties he mentioned were made from the New York office, or were expressly authorized in each case. He wrote the company advising them to make the guaranties, and asking it to permit him to make them in his own name, and most of the guaranties he made were in fact in his own name and did not purport to bind the company.

The sale of stock in question was the first one to the plaintiff, and was made without any suggestion that there was to be a guaranty. The defendant says:

"The purchase of the stock was before the guaranty, I admit that part, but the guaranty was given two months after the stock was purchased and paid for through the fact that this Vail matter had been brought to Mr. Sherman's attention. While I cannot recollect all the details, as I recollect, he wanted to know, 'Mr. Vail has a guaranty; can't I have a guaranty too from Daugherty & Albers?' I said, 'Yes,' that Albers had authorized me to give guaranties if I had to use them in the sale of stock. I am just stating that Albers informed me that I had authority to make these guaranties. I gave this guaranty, as I recollect it, it was two months after the original stock was delivered at the suggestion of Mr. Sherman. I told him I had authority to give it, and I gave it to him. I signed the agreement for Daugherty & Albers. It was delivered in Kingston. I forget whether I delivered it or Mr. Pultz. It was written by Pultz, and I think it was signed in Kingston when he bought the second block of stock. I think the first and second agreement were given at the same time. * * * As I recollect the matter, this stock was purchased and paid for before anything was said about the guaranty. The guaranty was given two months later."

After this sale was completed, and after the company had notified the defendant that it could not give any more guaranties, he made other sales of stock to the plaintiff, giving his personal guaranty, and in order to help make these additional sales he gave the company's guaranty to cover the former sale, which he concedes was made without guaranty.

The by-laws in evidence prima facie negative the authority of the defendant to issue this guaranty. It cannot be implied from a power to make a sale, for the reason that it is no part of a sale where the agent gets 10 per cent. for making it, to have the principal agree to purchase back the property sold for the full purchase price at any time the purchaser may elect. It is a most extraordinary agreement, the authority to make which must appear, as the agreement itself is practically inconsistent with the terms of sale.

Viewing the evidence most favorably to the defendant, it shows that, in several cases where he specially called the attention of the company to the transaction, they reluctantly gave this guaranty. He gave many such guaranties in his own name, and apparently for the reason that the company would not make them, as he feared it would not. This sale to the plaintiff was made without any suggestion of guaranty, and was an absolute sale of the stock. He was permitted, if he could not sell the stock without the guaranty, to use it, and did use it in two or three cases. February 18th, before the guaranty was given, the company notified him it would give no further guaranties, and thereafter he gave guaranties in his own name, and about March 27th thereafter did induce the sale of other stock to the plaintiff upon his guaranty, and at the plaintiff's request he gave this guaranty to the plaintiff, saying that he had authority to give it. He had no authority. Whatever authority he had to give guaranties had been revoked. This sale had been made without guaranty, and there was never any authority in him to guarantee it. He was receiving 10 per cent. commissions on sales, and, in order to make new sales under his own guaranty, he executed this guaranty in violation of his express instructions. It is immaterial, therefore, whether we take the plaintiff's version or the defendant's version of the transaction; the guaranty was issued without authority and for his own benefit.

The judgment should therefore be affirmed.